**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT THOMAS IRVIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:15-cv-0782** |
| | ) | |
| **CLARKSVILLE DEPARTMENT OF** | ) | **Judge Trauger** |
| **ELECTRICITY / CDE,** | ) | |
| **DORA McCARY, and** | ) | |
| **KIM McMILLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Robert Thomas Irvin, proceeding *pro se*, has filed a civil complaint against defendants "Clarksville Department of Electricity/CDE," Clarksville Constituent Services Director Dora McCary, and Clarksville Mayor Kim McMillan. Because the plaintiff proceeds *in forma pauperis*, the complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth herein, the plaintiff's claims under the federal Truth-In-Lending Act, 15 U.S.C. § 1601, will be permitted to proceed, but the remaining claims will be dismissed for failure to state a claim for which relief may be granted.

**I.     FACTUAL ALLEGATIONS**

The plaintiff alleges that the Clarksville Department of Electricity ("CDE") is a division of the City of Clarksville and that the Mayor's Office is therefore the appropriate place to complain about the policies or acts of CDE.

On May 28, 2015, the plaintiff went to CDE to pay his electricity bill for the service period of April 24 through May 26, 2015. The plaintiff paid $67.65 cash but told the person assisting him at CDE that his Social Security check would not arrive until June 5, 2015 and that he would pay the remainder of his bill at that time. He was told that June 5, 2015 was not acceptable, and that if the bill were not paid by June 29, 2015, his service would be terminated. (ECF No. 1, at 2.) The plaintiff asked to see someone about a hardship but was told he could not because he had "used up all of [his] chances to make partial payments." (*Id.*) The plaintiff walked away, but stated "I'm going to complaint about CDE." (*Id.*)

The plaintiff's electrical bill for the service period is attached as an exhibit to his complaint. The bill that he states he received originally in the mail indicates that the total due was $73.50 ($71.08 for service and $2.42 for "landfill"). (ECF No. 1-1, at 2.) That bill also stated:

> This is a reminder that as of 06/22/15 we have not received payment on your account. If your payment was mailed, you may wish to contact our office . . . to confirm receipt. . . . This outstanding balance may appear on your next monthly billing statement. To avoid interruption of service and additional charges, please pay the amount by 06/29/15. For counseling or hardship cases or requesting a hearing for a disputed bill, please contact our office at 648-8151.

(*Id.*) At the plaintiff's request, an updated bill was given to him. This bill is for $198.42, including a prior balance of $125.77 from an earlier service period. On its face, the bill states that payment of the total amount was due on June 17, 2015, and that if the bill were not paid by that date then the total due would increase to $201.80. The bill also states a service termination date for non-payment of June 29, 2015. (ECF No. 1-1, at 2.)

In any event, the plaintiff left CDE's offices and went straight to the mayor's office. He was stopped by a safety officer upon entering the building. The safety officer told him that Dora McCary, Constituent Services Director and Aid to Mayor McMillan, had told him not to allow the plaintiff beyond the inspection point. The officer instead gave the plaintiff Ms. McCary's telephone number. The plaintiff called the number, left his name and telephone number, stated that he was "pissed off," and then left the building. The plaintiff never received a return call from McCary or anyone else at the mayor's office.

The plaintiff apparently did not pay the outstanding balance on his account when he received his disability check on June 5. His electricity service was terminated on June 30, 2015. The plaintiff states he paid $80.00 (either in addition to or including a $30.00 re-connection fee) to have service reinstated.

The plaintiff asserts that CDE's ulterior motive is to charge and receive the re-connection fee from indigent consumers like him, which is in violation of "the reason that CDE/Defendant [receives] grants and/or loans from the U.S. Government . . . supposedly to help the poor and/or layman such as herein Plaintiff . . . ." (ECF No. 1, at 4–5 (ellipses and underlining in original).)

The plaintiff asserts that the defendants' actions violated his rights under the First and Fourteenth "Articles," which the court construes to mean Amendments to the United States Constitution. He also asserts that CDE is subject to the Truth-in-Lending Act, 15 U.S.C. § 1601, pertaining to the informed use of credit. He asserts that CDE violated § 1601 by engaging in unfair and inaccurate billing practices,

specifically by (1) failing to explain benefits or hardship services available to consumers; (2) charging unfair fees; (3) failing to accept partial payment; (4) making the cost of electricity prohibitively expensive for many people, including the plaintiff; (5) treating the plaintiff unfairly and denying him basic rights; and (6) insisting that consumers pay their bills within 10 days instead of allowing them 30, even though CDE gets loans and grants from the United States government. (ECF No. 1, at 5–7.)

The plaintiff seeks compensatory damages of $250,000 "based upon the neighborhood of 100 Short Stacker Drive at Clarksville, TN [where the plaintiff resides] and the house there and furnishings therein affected by Defendant's inexcusable actions," and punitive damages of $500,000, with the right to seek more if his health problems are exacerbated by the defendants' actions. (ECF No. 1, at 5, ¶¶ 12–13.) He also seeks compensatory damages of $1,000,000 and punitive damages of $2,000,000 based on the defendants' "willful and wanton clandestine actions that allow [them] to get and receive grants from The U.S. Government in the name of the citizens of Clarksville, Tn." (ECF No. 1, at 7, ¶¶ 16–17.) Finally, he seeks to enjoin the defendants from continuing to violate his civil rights.

## II.     STANDARD OF REVIEW

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under § 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,'

rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks and citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

III.    **DISCUSSION**

The plaintiff apparently intends to bring suit under 15 U.S.C. § 1601, the Truth-In-Lending Act ("TILA"), and under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

A.    **Section 1983 Claims**

The court notes as an initial matter that the plaintiff's references to the Fourteenth "Article" do not suffice to state a claim for violation of the Fourteenth Amendment, because the plaintiff has not included allegations that support a claim that he was deprived of any process that was due to him under the law.

The claims against Dora McCary appear to be based on allegations that this defendant refused to allow the plaintiff into the mayor's office on one occasion and failed to return the plaintiff's phone call. (*See* ECF No. 1, at 4 ("Plaintiff wants to know, who gave Dora/Defendant . . . or any of THE CITY OF CLARKSVILLE EMPLOYEES . . . the belief and/or right to tell the Plaintiff that he [Plaintiff] cannot enter the Mayor's Office . . . denial to enter Mayor's Office . . . especially, so when Mayor's Office has been warned by CDE/Defendant that Plaintiff is en route to that office . . . is a violation of ARTICLE(S) I & XIV." (alterations in original)).) The court liberally construes the complaint as attempting to assert a claim

against McCary under § 1983 based on alleged violations of the plaintiff's right under the First Amendment "to petition the Government for a redress of grievances."

The First Amendment protects the right to petition the government for the redress of grievances and includes the right to use the legal/judicial process to seek redress for the alleged wrongs of public officials. *See United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) (noting that the right to petition the government for the redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights"). The right to petition the government encompasses oral as well as written petitions. *See, e.g.*, *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (refusing to distinguish between oral and written petitions in the context of a retaliation claim).

Notwithstanding, the First Amendment does not guarantee unfettered personal access to elected officials. The petitioner alleges that he was prohibited on one occasion from barging into the mayor's office. He does not allege that he made any follow-up efforts to meet or speak with either McCary or the mayor. One isolated instance of instructing a security officer not to allow an angry constituent into the mayor's office and one isolated instance of failing to return a telephone call do not give rise to a claim of constitutional dimension based on the denial of the right to petition the government. Further, to the extent the plaintiff's claims are premised upon on the defendants' refusal to listen to him or to return his call, such claims fail, because "[n]othing in the First Amendment . . . suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984). In sum, the court finds that McCary's alleged instruction to bar the plaintiff from entering the mayor's office on one occasion and her failure to return the plaintiff's call, while arguably unprofessional, did not violate the plaintiff's rights.

Insofar as the plaintiff seeks to assert a claim against McMillan in her individual capacity based on the same facts, the attempt fails because he does not allege that McMillan was personally aware of or had any involvement in the events giving rise to his complaint. The complaint does not state a First Amendment claim against McMillan in her official capacity either, because it does not allege that McCary's barring the plaintiff from the mayor's office was based on an unconstitutional policy or procedure adopted by the City.

All of the plaintiff's § 1983 claims are subject to dismissal for failure to state a claim for which relief may be granted.

### B. Truth-In-Lending Act Claims

The court broadly construes the complaint as asserting claims under 15 U.S.C. § 1601, the Truth-In-Lending Act ("TILA"), against McMillan in her official capacity (based on the plaintiff's allegations that the mayor's office is the appropriate office in which to lodge complaints against CDE) and against CDE itself for alleged violations of 15 U.S.C. § 1601. The claims are premised upon allegedly unlawful fees and interest associated with the extension of credit by the CDE. At this juncture court will not dismiss such claims. While TILA and its implementing regulations do not apply to "transactions under public utility tariffs," 15 U.S.C. § 1603(4), or to the extension of "public utility credit," 12 C.F.R. § 226.3, the court cannot determine on the record before it whether CDE qualifies for this exemption. The official-capacity claims against Mayor McMillan, which are equivalent to claims against the City of Clarksville, and the claims against CDE, alleging violations of TILA, will be permitted to proceed.

## IV. CONCLUSION

Because the complaint fails to state a claim for which relief may be granted against defendants Dora McCary or Mayor Kim McMillan i under 42 U.S.C. § 1983, such claims will be dismissed. The complaint, broadly construed, states colorable claims under TILA against Mayor McMillan in her official capacity and against CDE, which, for purposes of the initial review, will be permitted to proceed. An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge